UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ANTONIO VITOLO and JAKE'S BAR AND GRILL, LLC, | ) ) ) Case No. 3:21-cv-176 |
| *Plaintiffs*, | ) ) Judge Travis R. McDonough |
| v. | ) ) Magistrate Judge Debra C. Poplin |
| ISABELLA CASILLAS GUZMAN | ) ) |
| *Defendant*. | ) |

## MEMORANDUM OPINION

Before the Court is a motion for preliminary injunction filed by Plaintiffs Antonio Vitolo and Jake's Bar and Grill, LLC (Doc. 11). For the following reasons, the Court **DENIES** Plaintiffs' motion.

**I.     BACKGROUND**

On May 12, 2021,[1] Plaintiffs filed a complaint asserting that the Restaurant Revitalization Fund (the "RRF"), created by § 5003 of the American Rescue Plan Act of 2021 (the "ARPA"), includes a twenty-one-day priority period that violates the United States Constitution's equal protection clause and due process clause because it impermissibly grants benefits and priority

---

[1] On the same day, Plaintiffs filed a motion for temporary restraining order (Doc. 12) and a motion for preliminary injunction (Doc. 11). Plaintiffs also filed a single memorandum in support of their motion for temporary restraining order and preliminary injunction. (Doc. 12-2.) On May 17, 2021, the Court entered an order denying Plaintiffs' motion for temporary restraining order (Doc. 20), and, on May 19, 2021, the Court entered a memorandum opinion explaining its reasoning for denying Plaintiffs' motion for temporary restraining order (Doc. 24). The facts underlying Plaintiffs' motions for injunctive relief are more fully set forth in said memorandum opinion (Doc. 24) and are incorporated by reference herein.

consideration based on race and gender classifications. (Doc. 1, at 8–9.) Plaintiffs requested that the Court enter both a temporary restraining order prohibiting the Small Business Administration ("SBA") from paying out grants from the RRF unless it processes applications in the order they were received (without regard to the race or gender of the applicant), and a preliminary injunction requiring the SBA to process applications and pay grants in the order received regardless of race or gender, among other forms of relief. (*Id*. at 9–10.)

The Court denied Plaintiffs' motion for temporary restraining order on May 17, 2021. (Docs. 20, 24.) On May 20, 2021, Plaintiffs notified the Court that they wanted to proceed with their motion for preliminary injunction, but proposed that "this Court give Defendant a short period to file any supplemental briefing, a short period for Plaintiffs to file a reply, and then rule on the preliminary injunction motion on the briefs, without another hearing." (Doc. 28, at 1.) Defendant filed a response to Plaintiffs' motion for preliminary injunction on May 21, 2021 (Doc. 30), and Plaintiffs moved for leave to file a reply in support of their motion for preliminary injunction (Doc. 31). Plaintiffs' motion for leave to file a reply is **GRANTED**, and Plaintiffs' motion for preliminary injunction is ripe for review.

## II. ANALYSIS

### A. Standard of Law for Preliminary Injunction

"In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.

2000)). These factors are identical to those considered by the Court in denying Plaintiffs' motion for temporary restraining order. (Doc. 24, at 8.)

### B. Likelihood of Success on the Merits

#### *i.* *Article III Standing*

In addition to the arguments previously advanced in opposing Plaintiffs' motion for a temporary restraining order, the Government now argues that Plaintiffs are unlikely to succeed on the merits of their claims because they have not established standing as it relates to their race-based equal-protection claim. (Doc. 30, at 3–6.)

The case-or-controversy requirement of Article III, Section 2 requires that a plaintiff have standing to sue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Daunt v. Benson*, 956 F.3d 396, 417 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). An injury, for standing purposes, means the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent.'" *Id.* (citing *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548. A "concrete" injury in fact does not have to be tangible, but it must be "'real,' and not 'abstract.'" *Id.* The plaintiff bears the burden of showing that he has standing. *Galaria*, 663 F. App'x. at 387 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)). When a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing. *See Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

3
Case 3:21-cv-00176-TRM-DCP   Document 32   Filed 05/25/21   Page 3 of 7   PageID #: 266

Plaintiffs allege that they have suffered an injury in fact "caused by the race and gender preferences in Section 5003 of the [ARPA]." (Doc. 31-1, at 4.) According to the complaint, Plaintiffs applied for funds from the RRF on May 3, 2021, but Plaintiffs' application was designated as non-priority. (Doc. 1, at 6–7.) Plaintiffs contend that because they are "ineligible for the race-based and gender-based priority period" created by the SBA's regulations and ARPA § 5003(c), this "amounts to a *de facto* denial of a government benefit." (Doc. 34-1, at 4, 6.) The Government argues, however, that Plaintiff has not alleged an injury traceable to the challenged provisions because "regardless of the race-conscious presumption at issue in this case, Plaintiff has not alleged that he is otherwise socially disadvantaged" as required to qualify for the priority period. (Doc. 30, at 4.)

The Sixth Circuit has stated:

> When plaintiffs allege a violation of the Equal Protection Clause in the context of a government program, courts must evaluate whether the claimed injury is one that invades a legally protected interest. If the plaintiffs allege that a racial preference cost them some benefit under a government program, those plaintiffs may have alleged an injury in fact. But if those same plaintiffs cannot also allege and show that "under a race-neutral policy" they would have received the benefit, those plaintiffs have not alleged an injury in fact because they have not alleged an invasion of some interest that the law protects. Those plaintiffs lack Article III standing. If, however, the plaintiffs allege some kind of on-going constitutional violation and seek forward-looking relief to level the playing field, then the plaintiffs need only show that the racial preference hinders their ability to "compete on an equal footing." That plaintiffs would not have received the benefit even absent the preference is irrelevant to an Equal Protection analysis.

*Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002) (citations omitted).

Plaintiffs allege that the race-conscious language of both the SBA presumption and the definition of "socially disadvantaged" as applied in ARPA § 5003(c)(3)(a) denies them equal protection under the law, as the processing of Plaintiffs' RRF application is being delayed on the basis of race. This is an allegedly ongoing constitutional violation, as well as an invasion of a

legally protected interest that is particularized to Plaintiffs. Plaintiffs therefore "need not allege that [they] would have obtained the benefit" of otherwise qualifying for the priority period or receiving funds from the RRF absent the challenged language. *See Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993). If the court struck down the race-based presumption of the SBA regulations or the race-conscious portions of the definition of "socially disadvantaged," at the very least the playing field in qualifying for the priority period would be "leveled" in that the race of the applicant would not factor into the order in which applications are processed by SBA. This is sufficient to confer standing.

Further, Defendant does not argue that Plaintiffs have not established standing for their gender-based equal-protection claim, and the Court finds that standing exists. Plaintiffs are allegedly injured because Plaintiff Vitolo is excluded from the priority period on the basis of his gender. This exclusion is caused by the fact that women, but not men, qualify for the priority period per the language of ARPA § 5003(c) and are therefore considered for eligibility for RRF funds before men. Finally, were the Court to strike the gender-based limitation on the priority period, Plaintiff Vitolo would no longer be excluded from applying for the priority period on the basis that he is male. Accordingly, the Court finds that Plaintiffs have standing to bring this action and seek injunctive relief.

### ii. *Supplemental Findings from the Congressional Record*

The Court's prior denial of Plaintiffs' motion for a TRO addresses the same factors that control the preliminary-injunction analysis, and the Court incorporates that reasoning by reference. (*See generally* Doc. 24.) Plaintiffs did not wish to hold a preliminary-injunction hearing (*see* Doc. 28, at 1) and have not submitted additional evidence since the Court's denial of their motion for a TRO. Defendant submitted additional materials from the Congressional record

that bear upon whether a compelling interest justifies the race-based priority period at issue and an important interest justifies the gender-based priority period at issue. (Doc. 30, at 6–9.)

Defendant's additional materials from the Congressional record strengthen the Court's prior conclusion that Plaintiffs are unlikely to succeed on the merits. For example, a Congressional committee received the following testimony, which linked historical race and gender discrimination to the early failures of the Paycheck Protection Program (the "PPP"):

> As noted by my fellow witnesses, closed financial networks, longstanding financial institutional biases, and underserved markets work against the efforts of women and minority entrepreneurs who need capital to start up, operate, and grow their businesses. While the bipartisan CARES Act got money out the door quickly [through the PPP] and helped many small businesses, the distribution channels of the first tranche of the funding underscored how the traditional financial system leaves many small businesses behind, particularly women- and minority-owned businesses.

*Access Denied: Challenges for Women- and Minority-Owned Businesses Accessing Capital and Financial Services During the Pandemic*, at 9 (July 9, 2020), available at https://www.govinfo.gov/content/pkg/CHRG-116hhrg43195/pdf/CHRG-116hhrg43195.pdf (testimony of Karen Kerrigan, president of the Small Business & Entrepreneurship Council); *see also id.* at 78 (Kerrigan's written statement noting that "[m]inority and women-owned business owners who lack relationships with banks or other financial institutions participating in PPP lacked early access to the program"); *id.* at 2 (Chairwoman Beatty observing that historical lack of access to capital among minority- and women-owned businesses contributed to significantly higher closure rates among those businesses during the COVID-19 pandemic, and that the PPP disproportionately failed to reach those businesses); *How Invidious Discrimination Works and Hurts: An Examination of Lending Discrimination and Its Long-Term Economic Impacts on Borrowers of Color*, Congressional Research Service (Feb. 24, 2021), available at https://www.congress.gov/117/meeting/house/111236/documents/HHRG-117-BA09-20210224-

SD002-U1.pdf (explaining that lending discrimination against people of color continues to the present and that contemporary wealth distribution is linked to the intergenerational impact of historical disparities in credit access).

Plaintiffs have not attempted to rebut this evidence. As with the TRO, then, the Court cannot conclude that Plaintiffs are likely to succeed on the merits.

### C. Other Preliminary Injunction Factors

The points raised in the parties' briefing on Plaintiff's motion for preliminary injunction have not impacted the Court's analysis with respect to the remaining preliminary injunction factors. Accordingly, for the reasons stated in the Court's memorandum opinion denying Plaintiff's motion for a temporary restraining order (Doc. 24), a preliminary injunction is not warranted.

### III. CONCLUSION

For the reasons stated herein, Plaintiffs' motion for preliminary injunction (Doc. 11) is **DENIED**.

**SO ORDERED**.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**