IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| ANTONIO VITOLO and JAKE'S BAR AND GRILL, LLC, <br><br> *Plaintiffs*, <br> v. <br><br> ISABELLA CASILLAS GUZMAN, <br><br> *Defendant*. | Case No. 3:21-cv-176-TRM-DCP <br><br> Chief Judge Travis R. McDonough <br><br> Magistrate Judge Debra C. Poplin |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' SECOND EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Congress enacted the American Rescue Plan Act ("ARPA") in March 2021 as a continuation of the federal government's efforts to provide relief to American individuals and businesses suffering the economic and public health effects of the COVID-19 pandemic. The Act allocated $28.6 billion towards a Restaurant Revitalization Fund ("RRF") to be administered by the Small Business Administration ("SBA") that could grant eligible restaurants relief equal to revenue losses caused by the pandemic. In creating the RRF, Congress permitted all eligible restaurants to apply for relief but instructed SBA, for the first 21 days the RRF operated, to prioritize processing claims from restaurants owned by women, veterans, and socially and economically disadvantaged individuals.[1] The priority period operated from when the RRF portal opened on May 3, 2021 through May 24, 2021.[2]

SBA opened the portal for RRF applications on May 3, 2021. Due to overwhelming demand from restaurants, claims on the RRF rapidly dwarfed the allocation of funds set aside by Congress

---

[1] SBA often uses the shorthand term "priority applications" or "priority applicants" to refer to small businesses that fall into these categories, and those terms are used throughout this brief.

[2] In crafting this priority period, Congress was motivated by extensive evidence showing its prior COVID-19 relief efforts exacerbated existing inequalities between different groups of small business owners—including women and socially and economically disadvantaged restaurant owners—due to past and present discrimination within public and private lending markets. Congress also analyzed similar evidence showing that these businesses have borne an outsized burden during the pandemic due to past and present discrimination, including the lack of access to earlier COVID-19 relief funds.

1

and, accordingly, the SBA stopped accepting new applications for the RRF on May 24, 2021. Because the period Congress established for focusing on priority applications has ended, SBA also has stopped approving and disbursing funds for priority applications and is now focused solely on processing and approving eligible applications filed by individuals who did not identify themselves as falling into one of the priority groups identified by Congress.[3] SBA will continue to process and pay out pending claims until the fund is exhausted.

On May 12, 2021, Plaintiffs Antonio Vitolo and Jake's Bar and Grill LLC filed this action challenging the priority period under Section 5003. As explained in more detail below, SBA disbursed funds to Plaintiffs under the RRF on June 1, 2021. Also on June 1, 2021, Plaintiffs filed an Amended Complaint in this action adding several Additional Plaintiffs. *See* Am. Compl. ¶¶ 6-9. These Additional Plaintiffs now seek to enjoin the priority period provision of the RRF, but their claim is moot because that provision has already ceased operation by its own terms. Because SBA is already processing non-priority applications—including the Additional Plaintiffs' applications—without regard for the owner's race or sex and because SBA has halted processing of priority applications until it has completed processing of all previously filed non-priority applications, Plaintiffs' claims are moot and no further injunctive relief is necessary or appropriate.

## BACKGROUND

**I.     The American Rescue Plan Act and the Restaurant Revitalization Fund**

On March 11, 2021, Congress enacted the American Rescue Plan Act, which provides widespread COVID-related relief to the American people and businesses, including restaurants. American Rescue Plan Act, Pub. L. No. 117-2 (2021) ("ARPA"). As relevant here, section 5003 of ARPA established the Restaurant Revitalization Fund ("RRF") and appropriated $28.6 billion to the fund for fiscal year 2021. ARPA § 5003(b)(1)-(2). Section 5003 instructs that in the first 21 days that grants are awarded through RRF, the SBA:

---

[3] SBA often uses the shorthand term "non-priority applications" or "non-priority applicants" to refer to small businesses that fall into this group, and those terms are used throughout this brief.

> shall prioritize awarding grants to eligible entities that are small business concerns owned and controlled by women (as defined in section 3(n) of the Small Business Act(15 U.S.C. 632(n)), small business concerns owned and controlled by veterans (as defined in section 3(q) of such Act (15 U.S.C. 632(q))), or socially and economically disadvantaged small business concerns (as defined in section 8(a)(4)(A) of the Small Business Act (15 U.S.C. 637(a)(4)(A))).

ARPA § 5003(c)(3)(A). The details of that prioritization scheme are set out in detail in Defendant's earlier filings and in this Court's prior order. *See, e.g.*, Def.'s Opp. to Pls'. Mot. for Temporary Restraining Order 2-8, ECF No. 18 ("Defs.' TRO Opp."); Mem. Op. 1-5, ECF No. 24.

## II. Operation of the Restaurant Revitalization Fund and Closing of the Priority Period

SBA began accepting applications through the RRF portal on May 3, 2021. *See* SBA, SBA Administrator Guzman Announces Application Opening for $28.6 Billion Restaurant Revitalization Fund, https://www.sba.gov/article/2021/apr/27/sba-administrator-guzman-announces-application-opening-286-billion-restaurant-revitalization-fund. Per section 5003, the opening of the RRF application process triggered the beginning of the 21-day priority period. Declaration of John A. Miller ¶ 7 ("Miller Decl."). Consistent with those provisions, SBA began processing applications from applicants who self-certified as qualifying for priority status. *Id* ¶ 12.

Demand for RRF grants was immediate and overwhelming from priority and non-priority applicants alike. On May 5, 2021, SBA reported that it had received approximately 186,000 applications in two days from both priority and non-priority businesses. *See* SBA, Administrator Isabella Casillas Guzman Announces Initial Results of Restaurant Revitalization Fund, https://www.sba.gov/article/2021/may/05/administrator-isabella-casillas-guzman-announces-initial-results-restaurant-revitalization-fund. On May 18, 2021, SBA announced that it had received 303,000 applications, requesting over $69 billion in funds. SBA, Last Call: Administrator Guzman Announces Final Push for Restaurant Revitalization Fund Applications, https://www.sba.gov/article/2021/may/18/last-call-administrator-guzman-announces-final-push-restaurant-revitalization-fund-applications. SBA announced that it would close the RRF application portal on Monday, May 24, at 8 p.m. ET. *Id.*

3

During the priority period from May 3 to May 24, 2021, SBA prioritized initiating processing of RRF applications from veteran-owned and women-owned restaurants, as well as restaurants owned by socially and economically disadvantaged individuals. Miller Decl. ¶ 12. After the expiration of the priority period, SBA made changes in order to comply with section 5003's instruction that the agency prioritize "awarding grants to eligible entities" only during the "initial 21-day period." ARPA § 5003(c)(3)(A). On May 25, 2021, SBA began processing applications from non-priority applicants with FY 2019 gross revenues less than $50,000. Miller Decl. ¶ 12. On May 27, 2021, SBA began initiating the processing of non-priority applications. *Id.* ¶ 14. SBA booked the final priority applications into SBA's E-Tran system for disbursement of funds on the afternoon of May 27, 2021. *Id.* ¶ 16. This group of approximately 2,002 priority applicants had previously been approved prior to the time SBA stopped further processing of priority applications on May 26, 2021, but were returned due to technical errors. *Id.* The funds for these applicants were disbursed by the Treasury Department on the morning of May 28, 2021. *Id.* SBA will only resume processing priority applications once it completes processing for the previously filed non-priority applications, and only then if the RRF is not first exhausted. *Id.* ¶ 15. In the meantime, SBA is continuing to process non-priority applications in a sequential order based on its ordinary review practices. *Id.* ¶ 14.

### III. Plaintiffs And This Litigation

On May 12, 2021, Plaintiffs Antonio Vitolo and Jake's Bar and Grill LLC filed the initial complaint in this action challenging the RRF priority period. *See generally* Compl., ECF No. 1. Plaintiffs moved for a temporary restraining order and a preliminary injunction, both of which were denied by this Court. *See* Order, ECF No. 20; Order, ECF No. 27. On May 27, 2021, the Sixth Circuit issued an opinion enjoining the SBA to "fund the plaintiffs' grant application, if approved, before all later-filed applications, without regard to processing time or the applicants' race or sex." *Vitolo v. Guzman*, No. 21-5517, 2021 WL 2172181, at *9 (6th Cir. May 27, 2021). On June 1, 2021, SBA disbursed $104,590.20 in RRF funds to Jake's Bar and Grill LLC. Miller Decl. ¶ 20.

Also on June 1, 2021, Plaintiffs filed an Amended Complaint in this action which added several Additional Plaintiffs, each of whom identifies as a white male and each of whom contends that "he was denied a priority preference based on his race and gender." *See* Am. Compl. ¶¶ 6-9.[4] On June 2, 2021, the Additional Plaintiffs filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, asking this Court to enjoin Defendant "to pay Additional Plaintiffs' grant applications, if approved, before all other later-filed applications, without regard to processing time or the applicants' race or sex." *See* Pls.' Second Emergency Mot. for a Temporary Restraining Order & Preliminary Injunction 1 ("Pls.' Second Emergency Mot."). The Court ordered Defendant to respond to Plaintiffs' motion on or before June 3, 2021. *See* Text Order, ECF No. 40.

## LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy." *Provectus Biopharmaceuticals, Inc. v. Dees*, No. 3:16-cv-222, 2016 WL 8738436 (Aug. 29, 2016) (quoting *Hacker v. Fed. Bureau of Prisons*, 450 F. Supp. 2d 705 710 (E.D. Mich. 2006)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The burden is on the party seeking the injunctive relief. *Thomas v. Schroer*, 116 F. Supp. 3d 869, 874 (W.D. Tenn. 2015); *see also Hartman v. Acton*, No. 2:20-cv-01952, 2020 WL 1932896, at *2 (S.D. Ohio Apr. 21, 2020) ("The 'burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one' since 'the party seeking 'the injunction must establish its case by clear and convincing evidence.'").

In determining whether to issue a temporary restraining order, the Court examines (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *See Overstreet v. Lexington-Fayette Urban Cty. Gov't.*, 305 F.3d 566, 573 (6th Cir. 2002). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418,

---

[4] Although the Amended Complaint does not expressly identify Plaintiff Alfred Castiglioni as a white male, Am. Compl. ¶ 8, his later-filed declaration identifies him as such. *See* Declaration of Alfred Castiglioni ¶ 6, ECF No. 39-1.

435 (2009). "When a court considers the four factors as part of a constitutional challenge, 'the likelihood of success on the merits will often be the determinative factor.'" *Michigan Rest. & Lodging Ass'n v. Gordon*, No. 1:20-cv-1104, 2020 WL 6866649, at *1 (W.D. Mich. Nov. 20, 2020) (quoting *Thompson v. DeWine*, 976 F.3d 610, 615 (6th Cir. 2020)); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (quoting *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)).

## ARGUMENT

### I. Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims Because Their Claims Are Moot.

To obtain a temporary restraining order or preliminary injunction, Plaintiffs must demonstrate that they are likely to succeed on the merits of their claim, including by establishing jurisdiction. Plaintiffs cannot make that showing here because their claim is moot and accordingly Plaintiffs lack standing to pursue their requested injunctive relief.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *L.A. Cty. v. Davis*, 440 U.S. 625, 631 (1979); *see also Cullen v. Gibson*, 124 F.3d 197, 1997 WL 547932 at *3 (6th Cir. 1997) ("A case is moot when no live controversy remains, and no live controversy remains when a court cannot provide effective relief."). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiffs' claims are moot because the statutory provision that they challenge—the priority period subsection of section 5003—expired by its own terms approximately one week before Plaintiffs filed their Amended Complaint. When, as here, a challenged action expires by its own terms, there is no longer a live case or controversy. The Sixth Circuit has previously recognized that "[o]nce a law is off the books and replaced with a 'new rule' that does not injure the plaintiff, a case becomes moot, leaving [the court] with an absence of jurisdiction to adjudicate the case." *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020). In *Pleasant View Baptist Church*, the Sixth Circuit held that a challenge to a state executive order prohibiting certain social gatherings due to COVID-19 was

6

moot because the order had expired and the Commonwealth had replaced it with a voluntary recommendation. *Id.* (citing *N.Y. State Rifle & Pistol Ass'n Inc. v. City of N.Y.*, 140 S. Ct. 1525, 1526 (2020) (per curiam); and citing *Trump v. Hawaii*, 138 S. Ct. 377, 377 (2017) (per curiam)); *see also Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (recognizing that a challenge to a stay-at-home order "will become moot . . . when the Governor has agreed to permit places of worship to reopen").

This approach is firmly rooted in Supreme Court case law. In *Trump v. Hawaii*, the Supreme Court initially granted certiorari to hear a challenge concerning a temporary order regarding the admission of refugees. *See Trump*, 138 S. Ct. at 377. But the Court found that after the "provisions of the Order have 'expired by [their] own terms,' the appeal no longer presents a 'live case or controversy.'" *Id.* (quoting *Burke*, 479 U.S. at 363). Similarly, in *Burke* the Supreme Court heard an appeal from members of Congress challenging the President's use of a "pocket-veto" over a specific bill. *See* 479 U.S. at 362. But the "bill in question expired by its own terms on September 30, 2018, a few weeks after the Court of Appeals entered its judgment." *Id.* at 363. The Supreme Court therefore concluded the case was moot. *Id.*; *cf. Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.,* 404 U.S. 412 (1972) (*per curiam*) (finding claim seeking declaratory relief that Florida law was constitutionally moot after statute's repeal).

Section 5003 directed the SBA to prioritize awarding grants to restaurants owned by women, veterans, and socially and economically disadvantaged individuals "[d]uring the initial 21-day period in which the Administrator awards grants" through the RRF. ARPA § 5003(c)(3)(A). That 21-day period has ended, and the priority period subsection of Section 5003 no longer dictates how SBA processes RRF applications. Thus, although the subsection is technically still "on the books," it no longer governs SBA's implementation of the program.

Nothing in Plaintiffs' complaint indicates that there is additional relief the Court can provide to Plaintiffs now that the priority period has concluded and SBA has begun processing non-priority applications and paused processing of priority applications. The Sixth Circuit previously held that the expiration of the priority period under Section 5003 did not render plaintiffs' challenge moot because

7

it found that "the program's race and sex preferences did not end with the priority phase" due to its understanding that "all of the 'priority applications that were received in the 21-day window are still being processed first'" and "no application is paid out before going through the 14-day processing window." *Vitolo*, 2021 WL 2172181 at *3. Plaintiffs argue that the same logic should apply here. However, the Sixth Circuit reached its decision without the benefit of additional information regarding the SBA's current approach to processing applications. Because the Sixth Circuit issued its decision minutes before Defendant intended to file the Second Miller Declaration in that case, the Sixth Circuit panel did not have before it the information that "SBA is not currently processing any priority applications" and that "SBA will only resume processing these applications once it completes processing for all previously filed non-priority applications, and only then if the RRF is not first exhausted." Miller Decl. ¶ 15. Those additional details make clear that this case is indeed moot.

Plaintiff suggests that "if SBA is continuing to process *any* later-filed priority applications . . . then the priority period continues to have an effect." Pls.' Second Emergency Mot. 3. However, SBA "is not currently processing any priority applications." Miller Decl. ¶ 15. And SBA has expressly stated that it "will only resume processing these applications once it completes processing for all previously filed non-priority applications, and only then if the RRF is not first exhausted" *Id*. Because SBA is not currently processing *any* priority applications, the priority period does not continue to have an effect.[5] Accordingly, the Additional Plaintiffs' applications are already being processed and considered "without regard to . . . the applicants' race or sex." *Vitolo*, 2021 WL 2172181 at *9; *see also* Miller Decl. ¶¶ 22-26.

RRF grants are not necessarily funded strictly in the order they were received. However, these differences in processing time are not based on an applicant's race or gender. Rather, it is a question of logistics: for example, "[s]ome applications are more complicated than others and take longer to

---

[5] Plaintiffs suggest that "priority applicants could completely deplete the fund before any white, male applicants received a shot at any funds." Pls.' Second Emergency Mot. 3. But SBA has already approved a number of non-priority applicants. Miller Decl. ¶ 17 ("SBA approved approximately 17,231 non-priority applications for grants of less than $360,000.").

review"[6] Miller Decl. ¶ 10.  In particular, SBA's processing guidelines require additional review of applications seeking more than $360,000 in funds; this more extensive review was adopted as a program decision to manage risk and protect against waste, fraud, and abuse.  *Id.* ¶ 11.  Processing these larger claims requires Form 4506-T verification of the applicant's tax returns from the IRS, which potentially takes as long as 8 business days.  *Id.*  Thus, an application for less than $360,000 in funds that does not require this Form 4506-T verification may be processed and considered faster than an application that does require verification.  *Id.*

And SBA's pause on priority applications ensures that grants to non-priority applicants are funded "without regard to the processing head start that many applications received on the basis of race and sex."  *Vitolo*, 2021 WL 2172181 at *3.  In other words, although applications are not necessarily funded "without regard to processing time," those differences in processing time are not based on an applicant's race or gender.  Moreover, "the actual order in which processing an application begins is determined by the order in which [applications] were received, subject only to the priority period rules."  Miller Decl. ¶ 10.  Plaintiffs have provided no explanation why the agency must fund grant applications in the order they were received "without regard to processing time" if the differences in processing time are not related to the priority period.  SBA is currently "processing non-priority applications, including the additional Plaintiffs' applications, in a sequential order based on its ordinary review practices."  Miller Decl. ¶ 14.  An injunction requiring the SBA to fund all applications in the order in which they were received, regardless of processing time, would allow a single deficient or particularly complex application to gum up the works, as no applicant would be able to be funded until that deficient or complex application was fully resolved and the funds were disbursed.  Such a condition could slow SBA's ability to disburse much-needed aid.

---

[6]  In fact, one of the original Plaintiffs in this action, Jake's Bar and Grill LLC, encountered a brief delay in the processing and funding of its application because the applicant's name did not match the name on the bank account provided in the application.  Miller Decl. ¶ 19.  SBA has since disbursed funds to Jake's Bar and Grill LLC, *id.* ¶ 20; however, this provides one example of a scenario where an applicant's funding may be delayed for reasons unrelated to the priority period.

9

Because the priority period has already expired and because SBA is already processing non-priority applications prior to continuing processing later-filed priority applications, this action is moot and no injunctive relief is necessary or appropriate.[7]

## II. Plaintiffs Have Not Alleged An Irreparable Injury.

Because SBA is already processing the Additional Plaintiffs' applications without regard to their race and gender, the Additional Plaintiffs cannot demonstrate that they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Preliminary relief is therefore moot and cannot aid Plaintiffs in preventing any potential future harm.

## III. The Balance of Equities and Public Interest Weigh Against Injunctive Relief.

Preliminary relief at this stage cannot aid the Additional Plaintiffs and can only possibly delay desperately needed aid for thousands of American restaurants. *See* Def.'s TRO Opp. 23. Requiring SBA to further pause disbursement of funds to comply with an injunctive order risks delaying this much-needed aid. Such a delay is not in the public interest, particularly where such an order is not necessary to prevent or remedy any alleged constitutional injury. Accordingly, the public interest dramatically weighs against a temporary restraining order or preliminary injunction.

## IV. Any Injunctive Relief Should Be Tailored To The Injury Plaintiffs Have Alleged.

Although Plaintiffs "move[d] . . . for a temporary restraining order and/or preliminary injunction, ordering Defendant to pay Additional Plaintiffs' grant applications, if approved, before all other later-filed applications, without regard to processing time or the applicants' race or sex," Plaintiffs request in a footnote that this court enter a "national injunction" regarding the RRF. As

---

[7] Plaintiffs state in a footnote that "[i]f the government continues to assert that an injunction is unnecessary without clearly explaining what it is doing," the Court should enter a brief injunction and allow Plaintiffs to submit interrogatories to the government "to get to the bottom of how the SBA is processing and funding applications." Pls.' Second Emergency Mot. 4 n.2. Defendant has provided a detailed declaration clearly explaining how SBA is processing applications and the conditions necessary for the agency to recommence processing priority applications. That explanation demonstrates that an injunction is unnecessary and that discovery into SBA's procedures is thus unnecessary at this juncture. In any event, Plaintiffs are not entitled to an injunction simply to pursue discovery into SBA's procedures, particularly where SBA has demonstrated that their claims are moot.

explained above, the Court should not grant a temporary restraining order or preliminary injunction in this case. But even if the Court were inclined to grant injunctive relief, that relief "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). As Defendant has previously explained, a nationwide injunction is not so tailored. *See* Def.'s Opp. to Pls.' Mot. for Preliminary Injunction 14-15, ECF No. 30. And in considering an earlier appeal in this very case, the Sixth Circuit declined to provide nationwide relief, instead limiting its injunction to the plaintiffs alone. *See Vitolo*, 2021 WL 2172181 at *9.

## CONCLUSION

For the foregoing reasons, Plaintiffs' second emergency motion for a temporary restraining order and preliminary injunction should be denied.

Dated: June 3, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director

s/*Alexandra R. Saslaw*
ALEXANDRA R. SASLAW
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-4520
alexandra.r.saslaw@usdoj.gov

*Attorneys for Defendants*